IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA
*ex rel.* NATHAN KIRCHGESSNER,
    Plaintiffs,

v.                                              Civil Action No. 3:16-cv-232

JAMES RIVER AIR CONDITIONING CO.,
et al.,
    Defendants.

## OPINION

This matter comes before the Court on the relator's motion for attorneys' fees and costs. For the reasons that follow, the Court will grant in part the motion and award the relator $110,735.41.

## I. BACKGROUND

The relator, Nathan Kirchgessner, filed a case under the False Claims Act ("FCA") against James River Air Conditioning Company ("JRA"). The relator alleged that JRA underpaid workers on government construction projects and falsely certified that JRA paid the workers according to federal laws. The government chose to intervene in the case and pursue two FCA claims against JRA.[1] Before JRA answered the complaint, the parties reached a $625,000 settlement, $106,250 of which will go to the relator. The parties, however, could not resolve the relator's claim for attorneys' fees and costs. While JRA agrees that the relator qualifies as a prevailing party entitled to reasonable attorneys' fees and costs under the FCA, the Court must decide a "reasonable" fee award. 31 U.S.C. § 3730(d)(1).

---

[1] The relator originally sued three other government contractors: J&J Maintenance, Inc; CTA I, LLC; and Centennial Contractors Enterprises, Inc. The relator also brought two additional FCA claims against JRA. The government did not pursue the other defendants or claims.

## II. DISCUSSION

To calculate an award, courts first determine a "lodestar" by multiplying a reasonable rate by a reasonable number of hours. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Twelve factors guide courts' discretion in formulating a lodestar:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243-44. Next, courts subtract fees for hours spent on unsuccessful claims that are not related to successful ones. *Id.* at 244. On the other hand, if unsuccessful claims arise out of the same facts or legal theories as successful claims, courts should not eliminate them from the award. *McNeil v. Faneuil*, No. 4:15-cv-81, 2017 WL 9771834, at *10 (E.D. Va. Nov. 8, 2017). Finally, courts award some percentage of the remaining amount based on the plaintiff's degree of success. *Robinson*, 560 F.3d at 244.

A fee applicant has the burden to establish the reasonableness of a requested rate. *Id.* In addition to the applicant's own affidavit, he must produce "satisfactory specific evidence of the prevailing market rates" for the work he performed in the relevant market. *Id.* The relevant market is the "community in which the court where the action is prosecuted sits," unless "the complexity and specialized nature of the case" mean that no local attorney has the required skills. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175, 179 (4th Cir. 1994). In this case, that market is Richmond, Virginia. *See Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 381 F. Supp. 2d 499, 505 (E.D. Va. 2005) (using Richmond rates for a case pending in this division).

The relator's fee petition refers to the "Laffey Matrix." The Laffey Matrix shows reasonable rates for attorneys in Washington, D.C., but it does not serve as a "reliable indicator" for attorney rates in the Eastern District of Virginia. *Robinson*, 560 F.3d at 245 (declining to apply the Laffey Matrix in the Alexandria division). The Laffey Matrix "is largely irrelevant" to the Richmond market in particular because "[r]ates in Washington, D.C. are considerably higher than those in Richmond for equally qualified and experienced attorneys." *McAfee v. Boczar*, 906 F. Supp. 2d 484, 493 n.3 (E.D. Va. 2012), *rev'd on other grounds*, 738 F.3d 81 (4th Cir. 2013). Additionally, regional rate surveys, like those from the National Law Journal, do not qualify as the type of specific rate evidence a fee applicant needs to carry his burden. *In re Star Sci., Inc.*, No. 1:13-cv-550, 2016 WL 4820637, at *6 n.9 (E.D. Va. Aug. 3, 2016) (citing *Westmoreland Coal Co. v. Cox*, 602 F.3d 276 (4th Cir. 2010)).

Here, the relator's evidence does not demonstrate the reasonableness of counsel's fees. First, the Laffey Matrix does not help the relator. The relator's attorneys, located near Washington, D.C., in Greenbelt, Maryland, point out that they request rates slightly lower than the Laffey Matrix. (Dk. No. 51-1, at 6.) But the Matrix represents rates "*considerably* higher" than rates in the Richmond market. *McAfee*, 906 F. Supp. 2d at 493 n.3 (emphasis added). Moreover, to rely on the Laffey Matrix, the relator would have to show that he had to find counsel in Washington, D.C., because no Richmond attorney could have handled this complex FCA case. *See Rum Creek*, 31 F.3d at 179. The relator has not done so here.

Additionally, Nicholas Woodfield submitted a supporting affidavit for the fee petition, but his office is in the Washington, D.C. area. He says he learned about the Richmond market by "reading other attorneys' fee applications and supplying affidavits." (Dk. No. 51-5, at 2.) The Court does not find Woodfield's affidavit persuasive for this market. *See McNeil*, 2017 WL

3

9771834, at *6 (rejecting Woodfield's opinion for a fee petition in the Newport News division). The relator also submitted an affidavit from Zachary Kitts, an FCA attorney based in northern Virginia, just outside of Washington, D.C. Kitts similarly relied on affidavits from other cases to form his opinion about Richmond rates. Moreover, Kitts cited a National Law Journal survey, a source that does not prove the customary fee in a given market. *See In re Star Sci.*, 2016 WL 4820637, at *6 n.9 ("[T]he Court cannot accept the survey from the National Law Journal as an adequate substitute for the 'specific evidence' of applicable rates.").

While the relator's attorneys certainly possess the experience and skill that an FCA case requires, the relator has not carried his burden to demonstrate the reasonableness of their rates in the Richmond market. Accordingly, the Court will reduce counsel's rates, except for law clerk rates, by 20%.[2] *See, e.g., In re Mediation in Health Diagnostic, Lab., Inc.*, No. 3:17-mc-4, 2018 WL 524711, at *5-6 (E.D. Va. Jan. 23, 2018) (awarding a $400 rate for a partner and a $200 rate for an associate when the movant did not prove the reasonableness of higher rates). This yields an hourly rate of $425 for Brian J. Markovitz; $273 for Matthew E. Kreiser; $263 for Timothy L. Creed and Jason M. Sarfati; and $159 for N. Brenda Adimora and William J. Fuller.

The Court next turns to a reasonable number of hours for this case. Counsel must exercise billing judgment as to the hours worked. *Hyatt v. Barnhart*, 315 F.3d 239, 253 (4th Cir. 2002). When reviewing timesheets, courts look for duplication of work, "lumping" of multiple tasks into one time entry, and vague or inadequate task descriptions. *In re Star Sci.*, 2016 WL 4820637, at

---

[2] JRA points out that the relator's attorneys have not revealed what portion of the relator's settlement proceeds they received. Even without this information, the Court acknowledges the potential for a windfall to the relator's counsel. *Cf. United States ex rel. Raggio v. Seaboard Marine, Ltd.*, No. 1:10-cv-1908, 2017 WL 2591288, at *3-4 (D.D.C. May 4, 2017) (using lower rates partly because the relator's counsel received "a sizeable portion" of the settlement award).

4

*7-8. In the fee petition, the relator's attorneys reduced their hours in several ways, including a 3% overall reduction to account for any "overbilling." (Dk. No. 51-1, at 8.)

Nevertheless, the time sheets reveal vague entries, such as "document review" and "edits to research." (*E.g.*, Dk. No. 51-2, at 4, 9.) More importantly, the relator's counsel spent too much time on this case, especially given the government's intervention.[3] *See United States ex rel. Tommasino v. Guida*, No. 10-cv-4644, 2017 WL 878587, at *5 (E.D.N.Y. Mar. 6, 2017) (noting that an FCA case "required limited commitment from relator's counsel once the government intervened"). While a relator does a lot of work to prepare a complaint, he or she plays a limited role while the government does its part in an FCA case. *See id.* Moreover, the partner on this file billed a vast majority of the time, even on tasks like researching damages and drafting the background section for the fee petition. (*E.g.*, Dk. No. 51-2, at 9, 12.) Accordingly, the Court will incorporate the relator's voluntary 3% reduction, and will further reduce the number of hours by 20% to account for excessive billing, plus 2% for inadequate time entries.

Additionally, while a relator can recover fees for time spent litigating a fee award, courts often limit the amount. *See Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) (capping fees incurred in fee litigation). Here, the relator requested over $30,000 for filing his fee petition, and an additional $7,853.50 for the reply brief. (Dk. Nos. 51-2, at 10-13; 53, at 16.) The Court finds this amount excessive. Moreover, JRA did not dispute that the relator should receive fees, so the parties only needed to brief the amount. *See Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir.

---

[3] JRA's bills emphasize the unreasonable amount of time the relator's counsel spent on this matter. The Court would expect defense counsel's hours to more significantly exceed the relator's counsel's hours due to the government's role. *See United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885, at *21 n.17 (D.S.C. May 23, 2002) (considering defense counsel's bills because they spoke to the time it would take to litigate a qui tam case).

1986) (affirming the district court's finding that hours spent on a fee petition were unreasonable when the parties did not dispute entitlement to fees and were familiar with the case). Accordingly, the Court will exclude time that counsel billed for the reply brief supporting the fee petition.

Finally, the relator requests $10,060.31 in costs. (Dk. No. 53, at 16.) A prevailing party may recover "incidental and necessary" costs with proper documentation. *Abbott-Burdick*, 2002 WL 34236885, at *23. JRA argues that the Court should exclude expert fees, but courts have determined that an FCA fee award includes expert fees. *See id.* (collecting cases). Accordingly, and finding the relator's costs reasonable, the Court will award the requested amount.

The Court declines to subtract fees for hours spent on unsuccessful claims because those claims arose out of a common core of facts and the relator based them on related legal theories. *See McNeil*, 2017 WL 9771834, at *10. Finally, given the prior reductions, the Court does not need to adjust the amount to account for the degree of success the relator achieved in this case.

## III. CONCLUSION

Adjusting the rates and hours listed in the fee petition (Dk. No. 51-1, at 7) accordingly yields the following lodestar table:

| Name | Title | Reduced Rate | Reduced Hours | Total |
| --- | --- | --- | --- | --- |
| Brian J. Markovitz | Partner | $425 | 177.3 | $75,352.50 |
| Matthew E. Kreiser | Associate | $273 | 27.7 | $7,562.10 |
| Timothy L. Creed | Associate | $263 | 19.0 | $4,997.00 |
| Jason M. Sarfati | Associate | $263 | 2.1 | $552.30 |
| N. Brenda Adimora | Law Clerk | $159 | 15.3 | $2,432.70 |
| William J. Fuller | Law Clerk | $159 | 61.5 | $9,778.50 |
| | | | 302.9 | $100,675.10 |

Finally, the Court excludes fees for the relator's reply brief in support of the fee petition, and adds in costs, resulting in a total award of **$110,735.41**.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 1 February 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge